NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KEN ANDERSON,<br><br>                 Defendant. | Case No. 2:22-cr-00826 (BRM)<br><br>**OPINION**<br>**(SEALED)** |

MARTINOTTI, DISTRICT JUDGE

Before the Court is Defendant Ken Anderson's ("Defendant") renewed[1] Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"), or, in the alternative, Motion for a New Trial pursuant to Rule 33. (ECF No. 111.) The United States of America (the "Government") filed an Opposition. (ECF No. 115.) Having reviewed the submissions filed in connection with Defendant's Rule 29 and Rule 33 motions (ECF No. 111) and having declined to hold oral argument, for the reasons set forth below and on the record during trial, and for good cause having been shown, Defendant's Rule 29 Motion for Judgment of Acquittal, or, in the alternative, Rule 33 Motion for a New Trial (ECF No. 111) is **DENIED**.

I.       BACKGROUND

The Court incorporates by reference the underlying facts set forth in the Court's April 8, 2025 Opinion. (ECF No. 45.) In the Indictment, Defendant was charged with one count of knowingly possessing two firearms and ammunition despite having been previously convicted of

---

[1] The Court previously denied Defendant's oral Rule 29 Motion for Judgment of Acquittal. (*See* ECF No. 108 (Trial Tr. Vol. III) at 30–31.)

1

a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 3 at 1.) Defendant's trial began on February 2, 2026, and concluded on February 9, 2026. (*See* ECF Nos. 105, 106, 107, 108, 109, 110.) The jury found Defendant guilty on the single count in the Indictment. (*See* ECF No. 102.) Defendant's criminal sentencing is currently scheduled for June 23, 2026.

At the conclusion of the Government's case, Defendant made a Rule 29 application and moved for a judgment of acquittal. (*See* ECF No. 108 at 26–28.) Following oral argument, the Court denied Defendant's Rule 29 motion. (*Id.* at 28–31.) On February 23, 2026, Defendant renewed his Rule 29 Motion for Judgment of Acquittal and moved for a new trial under Rule 33 Motion, in the alternative. (ECF No. 111.) On April 17, 2026, the Government opposed Defendant's Rule 29 and Rule 33 motions.[2] (ECF No. 115.)

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 29(c)(1) provides "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). In evaluating Rule 29 motions, courts "consider whether the evidence, when viewed in a light most favorable to the government, supports the jury's verdict." *United States v. Fattah*, 914 F.3d 112, 182–83 (3d Cir. 2019) (citing *United States v. Dixon*, 658 F.2d 181, 188 (3d Cir. 1981)). "When the sufficiency of

---

[2] The Court ordered the parties to confer on a briefing schedule. On April 1, 2026, the Government submitted a letter reflecting both parties' proposed briefing schedule—though the letter is misdated. (ECF No. 113.) The Court adopted the proposed brief schedule on April 2, 2026. (ECF No. 114.) Based on the Court's order, Defendant originally had until May 1, 2026, to reply to the Government's response to Defendant's Rule 29 and Rule 33 motions. (*Id.*) Six days after Defendant's reply deadline, the Court extended Defendant's reply deadline to May 11, 2026. (ECF No. 117.) On May 11, 2026, Defendant informed the Court and the Government that he was opting not to file a reply brief in this matter.

the evidence at trial is challenged, [courts] must view the evidence in the light most favorable to the government." *United States v. Anderson*, 108 F.3d 478, 480 (3d Cir. 1997) (citations omitted). Courts "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *Fattah*, 914 F.3d at 182–83 (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

"In conducting the sufficiency inquiry, [courts] do not view the government's evidence in isolation, but rather, in conjunction and as a whole." *Id.* at 134. "The court must determine 'whether all the pieces of evidence, taken together, make a strong enough case to let a jury find [the defendant] guilty beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Coleman*, 811 F.2d at 807). "In reviewing a jury verdict for sufficiency of the evidence, '[courts] determine whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Lore*, 430 F.3d 190, 203–04 (3d Cir. 2005) (quoting *United States v. Helbling*, 209 F.3d 226, 238 (3d Cir. 2000)). "A finding of insufficiency should be confined to cases where the prosecution's failure is clear." *United States v. Ollie*, 624 F. App'x 807, 811 (3d Cir. 2015) (quoting *Brodie*, 403 F.3d at 133). Therefore, "[t]he burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Rivers*, No. 18-00577, 2019 WL 4565223, at *1 (D.N.J. Sept. 20, 2019) (quoting *Lore*, 430 F.3d at 203).

Federal Rule of Criminal Procedure 33(a), however, provides "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so

3

requires." *United States v. Nwokedi*, No. 15-00177, 2016 WL 7015626, at \*4 (D.N.J. Dec. 1, 2016) (quoting Fed. R. Crim. P. 33(a)). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). But "even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *Id.* at 1004–05 (quoting *Johnson*, 302 F.3d at 150). Rule 33 motions for a new trial "are not favored and should be 'granted sparingly and only in exceptional cases.'" *Id.* at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)); *see also United States v. Lowell*, 490 F. Supp. 897, 904 (D.N.J. 1980), *aff'd*, 649 F.2d 950 (3d Cir. 1981) ("Motions under Rule 33 are addressed to the sound discretion of the trial court and are granted sparingly." (citations omitted)).

## III.   DECISION

Defendant was charged with one count of knowingly possessing two firearms and ammunition despite having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1), and was convicted on that sole count following a jury trial. (*See* ECF Nos. 105, 106, 107, 108, 109, 110.)

Defendant argues the Court should issue a judgment of acquittal pursuant to Rule 29 for insufficiency of the evidence, or, in the alternative, should order a new trial pursuant to Rule 33 because the Court: (1) refused to "to strike the . . . missing 'pocket bullet' testimony or provide a jury instruction to disregard same"; (2) did not dismiss Juror No. 7 during jury selection despite advanced notice regarding Juror No. 7's pre-planned vacation; and (3) dismissed Juror No. 2 "after

almost three days of deliberations based upon [supposedly] innocuous statements concerning 'outside influences' and the 'news.'" (ECF No. 111-1 at 4–5.)

In opposition, the Government contends Defendant's Rule 29 and Rule 33 motions fail as a matter of law, and therefore should be denied. (ECF No. 115.) The Court first addresses Defendant's renewed Rule 29 Motion for a Judgment of Acquittal and then addresses Defendant's alternative Rule 33 Motion for a New Trial.

### A.      Defendant's Renewed Rule 29 Motion

Defendant argues the Court should issue a judgment of acquittal pursuant to Rule 29(c)(1) because (1) the "evidence presented by the Government via the [Essex County Sheriff's Office] detectives and expert witnesses does not establish beyond a reasonable doubt that [Defendant] **knowingly** possessed the firearms and/or ammunition" and (2) "the Government failed to present evidence of a proper chain of custody connecting the firearms and ammunition it allegedly seized during [Defendant's] arrest to those presented at trial." (ECF No. 111-1 at 1–2 (emphasis in original).) Specifically, Defendant argues: (1) "[n]o evidence was presented that [he] admitted or acknowledged what was . . . in the backpack . . . because . . . he had no knowledge of its contents"; (2) "[n]o videos were taken during the alleged foot chase, nor was surveillance footage even pulled, making it impossible to identify the firearms and ammunition three and a half years later"; (3) "[n]o DNA or fingerprint evidence was introduced linking Defendant to the firearms and ammunition presented in court as those seized on July 25, 2022"; and (4) "[n]o evidence of the 'pocket bullet' appears in the evidence log(s) or chain of custody report(s) despite Detectives Petrucci and Martino's testimony referencing it." (*Id.* at 3.)

Additionally, in support of his argument that the so-called pocket bullet was "fabricated," Defendant highlights the following: Detective Nicholas Rodriguez ("Detective Rodriguez")

"testified that the two handguns and fifteen bullets presented at trial was all of the evidence recovered from . . . [Defendant] on the date of his arrest and that it all came from the backpack." (*Id.*) Defendant also points out that Detective Rodriguez "further testified that none of his colleagues provided him with additional evidence, nor did a search of . . . [Defendant]'s person reveal any contraband." (*Id.*) Moreover, Defendant underscores that the evidence officer, Detective Victor Brown ("Detective Brown"), "corroborated [Detective] Rodriguez's account when [Detective] Brown testified that all of the evidence he received came from the backpack." (*Id.*)

In opposition, the Government argues a judgment of acquittal is not warranted because the Government showed, through the testimony of Essex County Sheriff's Department Detectives Rodriguez, Dominick Petrucci ("Detective Petrucci"), and Giovanni Martino ("Detective Martino") that Defendant "knowingly possessed the guns and ammunition." (ECF No. 115 at 3–4 (emphasizing various testimony from the aforementioned detectives).) The Government also refers to its display of "the firearms and ammunition to the jury" and the moment when the Government "put forth evidence demonstrating what the backpack would have felt and sounded like as [Defendant] sprinted from law enforcement with it." (*Id.* at 4.) According to the Government, "[i]n total, this evidence, . . . shows both direct evidence of knowledge[,] as well as consciousness of guilt, [and] is more than sufficient" to support a jury finding that Defendant "had control over, and therefore possessed at least one of the firearms and ammunition." (*Id.* at 4–5 (citing *United States v. Hampton*, 543 F. App'x 206, 209 (3d Cir. 2013); *United States v. Booker*, 436 F.3d 238, 242 (D.C. Cir. 2006)).) With respect to Defendant's argument that he was the "victim of a 'set-up'" (ECF No. 111-1 at 1), the Government contends: (1) "there was no evidence presented at trial from which one could . . . reasonably infer such a conclusion"; (2) Defendant has "pointed to none in his Motion"; and (3) such an argument is "legally irrelevant" because "being 'set-up' is not a legal

defense recognized under the law and does not negate knowledge" (*id.* at 5 (citing ECF No. 62 at 11–13)).

Moreover, while the Government disputes Defendant's suggestion that there were gaps in the chain of custody, the Government argues that any such gaps "go to the weight of the evidence, not its admissibility." (*Id.* (citing *United States v. Rawlins*, 606 F.3d 73, 83 (3d Cir. 2010)).) The Government underscores that the jury, by virtue of its guilty verdict, rejected Defendant's chain of custody argument despite instructions that the jury could consider any defects in the chain of custody in determining the authenticity of the evidence. (*Id.* (citations omitted).)

Further, the Government contends "there is no requirement that fingerprints be lifted off a firearm, or that body camera exist to sustain Defendant's conviction." (*Id.* (citing *Hampton*, 543 F. App'x at 209).) As to the so-called pocket bullet, according to the Government, "there is no requirement in the law that the Government must have every piece of evidence in its possession to convict." (*Id.*) Finally, the Government reminds the Court that the jury did "not have [to] f[ind] Defendant guilty of possessing the bullet in his pocket" because the jury "was free to convict [him] of being a felon in possession of either one of the two guns or any . . . one of the many bullets." (*Id.* (citing *United States v. Kennedy*, 682 F.3d 244, 255 (3d Cir. 2012).)

The Court agrees. Defendant has not met the high bar for a judgment of acquittal under Rule 29 as he has not shown the evidence was insufficient to sustain the jury verdict. To satisfy its burden of proof to show a violation of 18 U.S.C. § 922(g), the Government had to prove beyond a reasonable doubt the following element,[3] as provided in the Jury Charge: "[Defendant] knowingly possessed any of the firearms or ammunition described in the [I]ndictment." (ECF No. 108 at 367–

---

[3] The Court only recites the second element because that is the only element Defendant challenges. (ECF No. 111-1 at 1; *see also* ECF No. 108 at 367–68 (enumerating the four elements that make up a violation of 18 U.S.C. § 922(g)).)

68.) The Government satisfied its burden of proof here with the evidence presented at trial, which was sufficient to show beyond a reasonable doubt that after a prior felony conviction, Defendant knowingly possessed any of the firearms or ammunition described in the Indictment. (*See generally* ECF No. 107 (Trial Tr. Vol. II).)

For example, Detective Rodriguez testified that Defendant was the sole occupant of the vehicle from which the backpack containing the loaded guns originated. (*See* ECF No. 107 at 53, 57, 62.) He also testified that Defendant fled when law enforcement approached him. (*Id.* at 55.) Detectives Rodriguez and Petrucci both testified that when Defendant exited the vehicle, he was holding a backpack. (*Id.* at 57, 186–87.) As the Government points out, in-court testimony revealed that "[d]uring the subsequent foot chase, [Defendant] led law enforcement through backyards, over fences, through a children's playground, across streets, and onto a busy highway, all the while clutching his backpack with the guns and ammunition." (ECF No. 115 at 4 (citing ECF No. 107 at 58–61, 79–81, 125, 149, 150–51).) Additionally, still clutching the backpack, Defendant jumped onto vehicles while running from law enforcement. (ECF No. 107 at 61, 150, 191.) Before the detectives "effected an arrest," Detective Rodriguez testified that Defendant "had dropped the black bookbag that he was carrying." (*Id.* at 61.) Detective Rodriguez also testified that when he searched the backpack, he found only two loaded firearms. (*Id.* at 61–62, 96.) Moreover, Detective Martino testified that after he had apprehended Defendant, he searched him and found a single bullet in the "front pocket [of] his jeans." (*Id.* at 152.) Detective Petrucci gave similar testimony. (*Id.* at 188.) According to Detective Martino, Defendant resisted arrest, shouted that he wanted to kill himself, and "tried continuing on to the eastbound traffic on" the highway. (*Id.* at 151–52.)

In addition to the aforementioned testimonial evidence, the Government also showed the firearms and ammunition to the jury, and demonstrated what the backpack would have felt and

sounded like as Defendant ran from law enforcement with the backpack in tow. (*Id.* at 151.)

When viewing the evidence in totality and in a light most favorable to the Government as the Court must do, *see Brodie*, 403 F.3d at 134; *Anderson*, 108 F.3d at 480, it is apparent there was sufficient evidence in the record for a rational jury to find that Defendant knowingly possessed any of the firearms or ammunition described in the Indictment and ultimately convict him. *United States v. Zwibel*, 181 F. App'x 238, 242 (3d Cir. 2006) ("[E]vidence that may establish constructive possession includes a defendant's attempt to hide . . . contraband . . . ."); *see also United States v. Godson*, 298 F. App'x 171, 173 (3d Cir. 2008) (noting that the defendant's evasive conduct, *i.e.*, running from the police "after they asked him to step out of the vehicle," was evidence of constructive possession of the firearm in question).

With respect to the alleged "gaps" in the chain of custody, the Government is correct that such gaps would go only to the weight of the evidence. *Rawlins*, 606 F.3d at 82–3 (noting that "in the ordinary case[,] gaps in the chain [of custody] go to the weight of the evidence"). The Government is also correct that a guilty verdict could have been based on a possession of either one of the two guns or any single one of the bullets in the Indictment. *Kennedy*, 682 F.3d at 255 (holding that although the simultaneous possession of multiple guns should be charged as a single count, possession of any one of those guns would sustain the charge). Moreover, as to Defendant's argument that he was supposedly set up and consequently did not know he was in possession of a firearm, there was no evidence from which a jury could so conclude (*see generally* ECF No. 107 (Trial Tr. Vol. II), ECF No. 108 (Trial Tr. Vol. III)) and, as the Government rightly underscores, Defendant's Rule 29 Motion does not point to any such evidence (*see* ECF No. 111-1).

Therefore, Defendant's renewed Rule 29 Motion for a Judgment of Acquittal is **DENIED**.

9

## B.      Defendant's Rule 33 Motion[4]

In the alternative, Defendant argues the Court should order a new trial pursuant to Rule 33 for three reasons. (ECF No. 111-1 at 4–5.) First, Defendant contends the Court should order a new trial because it erred in refusing to strike the so-called pocket bullet testimony or provide a jury instruction to disregard same. (*Id.* at 4.) Second, Defendant argues the Court should order a new trial because failing to dismiss Juror No. 7 was erroneous because Juror No. 7 informed the Court that she had a pre-planned vacation and would be leaving town on February 6, 2026, and the trial was scheduled through that date. (*Id.*) According to Defendant, the Court improperly assured Juror No. 7 that the trial would be done by then, and belatedly dismissed Juror No. 7 after almost two days of jury deliberations when the jury had already inquired about a "hung jury." (*Id.* (citing ECF No. 105 at 17–18).) Third, Defendant argues the Court erred by dismissing Juror No. 2 based upon "innocuous" statements concerning "outside influences" and the "news" after almost three days of deliberations and "two days after the jury inquired about a 'hung jury.'" (*Id.* at 5.) Specifically, Defendant posits it was erroneous for the Court to do so "without elaboration and while asking leading questions" because Juror No. 2 was a "clear 'hold out.'" (*Id.*)

In opposition, the Government argues Defendant is not entitled to a new trial because: (1) the Court's decision not to strike the testimony of the two law enforcement officers that observed a bullet in Defendant's pocket was not error despite Defendant's perception that the sworn testimony of multiple law enforcement officers was inconsistent; (2) the Court's dismissal of Juror

---

[4] Federal Rule of Criminal Procedure 33(b)(2) provides: "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Here, the jury found Defendant guilty on February 9, 2026. (ECF No. 102 at 1.) Defendant filed his Rule 33 Motion on February 23, 2026, which is within fourteen days after the jury verdict. Therefore, Defendant's Rule 33 Motion is timely. Fed. R. Crim. P. 33(b)(2).

No. 7 was not error because Defendant agreed to seat this juror and the Court was within its discretion when it replaced Juror No. 7; and (3) the Court's dismissal of Juror No. 2 was not error because, after the Court received a note from the juror indicating a possibility of improper bias, the Court conducted an on-the-record colloquy of Juror No. 2 and determined that Juror No. 2 was improperly biased. (ECF No. 115 at 10–11.) Moreover, the Government argues that even if the Court improperly excluded the jurors, "that error by itself does not justify a new trial . . . because the Sixth Amendment 'guarantees a right to an impartial jury, not the right to have a particular juror remain on the jury.'" (*Id.* at 11 (quoting *United States v. Green*, 664 F. App'x 193, 197 (3d Cir. 2016).)

Here, Defendant has not shown he is entitled to a new trial under Rule 33, which are "granted sparingly and only in exceptional cases." *Silveus*, 542 F.3d at 1005 (quoting *Derricks*, 810 F.2d at 55).

**1. Declining to Strike the Testimony of the Two Law Enforcement Officers Who Observed a Bullet in Defendant's Pocket and Declining to Instruct the Jury to Disregard Said Testimony Was Not Error.**

The Defendant takes issue with the inconsistency between Detective Petrucci and Martino's testimony—that there was a bullet in Defendant's pocket—and Detective Rodriguez's lack of knowledge of that bullet, as well as the apparent absence of that bullet in the evidence logs. (ECF No. 111-1 at 3–4.) But, as the Government correctly argues, that perceived inconsistency is no reason for the Court to order a new trial under Rule 33. *United States v. Weigand*, Crim A. Nos. 17-0556, 20-00248, 2022 WL 5123035, at *13 (E.D. Pa. Oct. 4, 2022), *aff'd*, No. 23-2159, 2025 WL 1554931 (3d Cir. June 2, 2025) ("Even if there was conflicting testimony . . . , the jury is entitled to weigh the conflicting evidence to find what the facts are. Indeed, that is the jury's main purpose. [Therefore], even if the Court assumed that there was conflicting evidence here, that is

11

not reason to overturn the jury's conviction.").

The Defendant had every opportunity to test the credibility of the Detectives Martino, Petrucci, and Rodriguez. (ECF No. 107 at 157–66, 191–204; ECF No. 108 at 271–83.) Moreover, the Court allowed Defendant to call Detective Brown, a new witness, mid-trial and without prior notice to explore issues related to the pocket bullet. (ECF No. 108 263–64, 293–316, 330–31.) Given the record before the Court, it would be inappropriate for the Court to intrude upon the jury function of credibility assessment. *Weigand*, 2022 WL 5123035, at *13.

## 2. The Court's Dismissal of Juror Nos. 2 and 7 Was Not Error.

The Court will address the juror dismissals in the order in which each juror was dismissed; as such, the Court turns first to the dismissal of Juror No. 7.

Under Third Circuit law, the Court can excuse jurors for a variety of legitimate reasons. *See United States v. Bradley*, 173 F.3d 225, 230 (3d Cir. 1999) ("[T]he record shows that the court dismissed [the juror] for *inability to serve* as a juror[] and that the court had sufficient information to support the dismissal . . . ." (emphasis in original)); *see also United States v. Cameron*, 464 F.2d 333, 335 (3d Cir. 1972) ("[T]he trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired.").

Here, the trial lasted longer than the Court previously anticipated.[5] (ECF No. 105 at 9.) Additionally, while Juror No. 7 informed the Court and both parties of her pre-planned vacation and pre-scheduled flight on February 6, 2026, at 6:00 a.m., Defendant did not use a peremptory challenge to remove Juror No. 7 and failed to object to her addition to the jury. (*Id.* at 17–18, 99,

---

[5] The trial lasted six days. (ECF No. 106; ECF No. 110.) The jury began deliberating on February 4, 2026 (ECF No. 108 at 402), and it reached a verdict on February 9, 2026 (ECF No. 110 at 470–72.)

107.) Accordingly, because of Juror No. 7's inability to continue serving as a juror given her scheduling conflict, the Court was well within its discretion to excuse Juror No. 7. *See United States v. Penn*, 870 F.3d 164, 170 (3d Cir. 2017) (citing *United States v. De Oleo*, 697 F.3d 338, 342 (6th Cir. 2012) (Thapar, J.) (noting the trial judge did not abuse her discretion when she replaced a student-juror who was concerned about missing classes when the trial ran longer than expected, having promised she would not miss classes)).[6]

It was also well within the Court's discretion to dismiss Juror No. 2. *See* Fed. R. Crim. P. 23(b); *United States v. Fattah*, 914 F.3d 112, 149 (3d Cir. 2019) ("Good cause exists [to excuse a deliberating juror] where a juror . . . demonstrates bias."). Here, the Court received a communication from the jury, which quoted Juror No. 2 as saying: "I am having a hard time working with only the instructions that were given to us, without influence from outside thoughts." (ECF No. 101 at 1.) Given this note, the Court conducted a sworn, on-the-record colloquy of Juror No. 2 outside the presence of the other jurors. (ECF No. 110 at 456–58.) Specifically, the Court asked Juror No. 2 what she meant by "outside thoughts." (*Id.* at 457–58.) Juror No. 2 explained that "outside thoughts" referred to "[e]xperiences from the news." (*Id.* at 458) When pressed for greater specificity, she initially struggled to provide further explanation. (*Id.* ("I don't know how to put it.").) The Court then asked the juror whether these "influences" would "affect" her "ability to be fair and impartial." (*Id.*) Juror No. 2 answered in the affirmative. (*Id.* ("Yes, Your Honor.").) Finally, the Court asked Juror No. 2 whether she felt she "would be biased against someone in this case," to which she again answered, "Yes, Your Honor." (*Id.*) On the basis of the jury note, the colloquy with Juror No. 2, the Court assessed Juror No. 2's credibility and determined that she

---

[6] As in *De Oleo*, 697 F.3d at 342, Defendant did not object to Juror No. 7 when she was added to the jury under the implicit condition that the Court would dismiss her if the trial ran beyond February 5, 2026. (*See* ECF No. 105.)

13

was biased against a party. (*Id.* at 459.)

Furthermore, as the Government argues, even assuming the exclusion of Juror Nos. 2 or 7 was improper, that error alone is no reason for the Court to order a new trial. *United States v. Green*, 664 F. App'x 193, 197 (3d Cir. 2016); *but see United States v. Michael*, No. 24-1769, 2025 WL 1905102, at *4 n.1 (3d Cir. July 10, 2025) (acknowledging a developing circuit split as to whether the Sixth Amendment guarantees a right to an impartial jury or a right for a particular impartial juror to be a member of the jury).

Therefore, based on current Third Circuit law, Defendant's Rule 33 Motion for a New Trial is **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above and on the record during trial, Defendant's renewed Rule 29 Motion for Judgment of Acquittal, or, in the alternative, Rule 33 Motion for a New Trial (ECF No. 111) is **DENIED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: May 28, 2026

14